1   Carmine R. Zarlenga (*pro hac vice*)
    zarlengac@howrey.com
2   HOWREY LLP
    1299 Pennsylvania Ave, NW
3   Washington, DC 2004-2402
    Telephone: (202) 783-0800
4   Facsimile: (202) 383-6610

5   Dale J. Giali (SBN 150382)
    gialid@howrey.com
6   HOWREY LLP
    4 Park Plaza, Suite 1700
7   Irvine, California 92614-2559
    Telephone: (949) 759-3944
8   Facsimile: (949) 266-5529

9   Attorneys for Defendant NESTLÉ USA, INC.

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  MAURICIO CHAVEZ, individually and      ) Case No. CV 09-9192 GW (CWx)
    on behalf of all others similarly situated,  )
14                                          ) Honorable George H. Wu
           Plaintiffs,                      )
15                                          ) **DEFENDANT NESTLÉ USA, INC.'S**
       vs.                                  ) **NOTICE OF MOTION TO DISMISS**
16                                          ) **SECOND AMENDED**
    NESTLÉ USA, INC.,                       ) **CONSOLIDATED CLASS ACTION**
17                                          ) **COMPLAINT; MEMORANDUM OF**
           Defendant.                       ) **POINTS AND AUTHORITIES IN**
18  _____        ) **SUPPORT; PROPOSED ORDER**
                                            )
19  VINCENT BONSIGNORE, et al.,             ) [Request for judicial notice filed
    individually and on behalf of all others ) separately]
20  similarly situated,                     )
                                            )
21         Plaintiffs,                      ) Date: May 2, 2011
                                            ) Time: 8:30 a.m.
22     vs.                                  ) Ctrm: 10
                                            )
23  NESTLÉ USA, INC.,                       ) Second Amended Consolidated
                                            ) Complaint filed January 31, 2011
24         Defendant.                       )
    _____        )
25

26

27

28

NESTLÉ'S MOTION TO DISMISS 2d AMENDED COMPLAINT - **Case No. CV09-9192 GW (CWx)**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on May 2, 2011, at 8:30 a.m., or as soon thereafter

3  as this matter may be heard, in Courtroom 10 of this Court, located at 312 N. Spring

4  Street, Los Angeles, California 90012, defendant Nestlé USA, Inc. will and hereby does

5  move the Court for an order dismissing with prejudice plaintiffs Mauricio Chavez,

6  Vincent Bonsignore and Zanetta Taddesse-Bonsignore's second amended consolidated

7  class Action complaint and each claim therein.

8      This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6)

9  based on the following grounds:

10     1.      Plaintiffs have failed to allege a "short plain statement . . . showing that the

11  pleader is entitled to relief" and further have failed to allege a plausible claim for relief

12  as required by Fed. R. Civ. P. 8;

13     2.      Plaintiffs have failed to plead their claims with clarity and particularity as

14  required by Fed. R. Civ. P. 9(b);

15     3.      The Court should abstain from determining plaintiffs' claims in this case

16  based on the doctrine of "primary jurisdiction;"

17     4.      Plaintiffs do not have Article III standing to seek injunctive relief because

18  they have not (and cannot) allege a threat of future injury; and

19     5.      Plaintiffs lack standing to bring claims pursuant to California's Unfair

20  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., and False

21  Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.,* because they have

22  not (and cannot) allege reliance upon the alleged false advertising.

23     This motion is the third motion to dismiss in this case and is made following

24  multiple conferences of counsel pursuant to L.R. 7-3.  The motion is based on this

25  notice of motion, the memorandum of points and authorities, the accompanying request

26  for judicial notice, the pleadings and documents on file in this lawsuit, and argument

27  and other matters as may be presented to the Court at the hearing.

28

HOWREY LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  March 2, 2011

HOWREY LLP
Carmine R. Zarlenga
Dale J. Giali


By: _____ /s/ *Dale J. Giali* _____
Dale J. Giali
Attorneys for Defendant
NESTLÉ USA, INC.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS & AUTHORITIES ........................................................ 1

*INTRODUCTION* ............................................................................................................ 1

*ARGUMENT* ................................................................................................................... 7

I.   THE SAC – REPLETE WITH "PUZZLE" AND "SHOTGUN" PLEADING – FAILS TO SATISFY RULES 8 AND 9 AND SHOULD BE DISMISSED .................................................................................. 7

II.   SEPARATE FROM "PUZZLE" AND "SHOTGUN" PLEADING, THE SAC FAILS TO COMPLY WITH RULE 9(B) AND SHOULD BE DISMISSED ................................................................ 12

III.   SEPARATE FROM "PUZZLE" AND "SHOTGUN" PLEADING, THE SAC DOES NOT ALLEGE A PLAUSIBLE CLAIM AND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED. ...................................................................................... 13

    A.   Plaintiffs' Allegations Regarding "Substantiation" and A "Duty to Disclose" Do Not State a Claim upon which Relief can be Granted ................................................................. 14

        1.   "Lack of Substantiation" is not a Legally Cognizable False Advertising Theory. ........................... 14

        2.   Plaintiffs fail to allege that Nestlé USA has a "Duty to Disclose." ..................................................... 15

        3.   Plaintiffs Concede the Attributes of the Nutrients. ...................... 18

    B.   The DHA Representations Are Not Plausibly False Or Misleading As A Matter Of Law. ................................. 18

    C.   The Vitamin C and Zinc Immunity Representations Are Not Plausibly False Or Misleading As A Matter Of Law ................. 20

    D.   The Digestion Related Representations Are Not Plausibly False Or Misleading As A Matter Of Law ............................ 21

IV.   THE COURT SHOULD DISMISS THIS CASE IN FAVOR OF THE FDA'S PRIMARY JURISDICTION OVER MATTERS OF FOOD AND BEVERAGE LABELING. ................. 22

V.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF. ........................................................................................... 24

VI.   PLAINTIFFS FAIL TO ESTABLISH STANDING UNDER THE UCL AND FAL. ....................................................................... 25

*CONCLUSION* ............................................................................................................... 25

---

-i-

HOWREY LLP

1

# TABLE OF AUTHORITIES

2

## **CASES**

*Agron, Inc. v. Chien-Lu Lin,*
2004 U.S. Dist. LEXIS 26605 (C.D. Cal. Mar. 16, 2004) ................................... 18

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009).................................................................................... 13

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 13

*Bruce v. Harley-Davidson Motor Co.,*
2010 U.S. Dist. LEXIS 98180 (C.D. Cal., Jan. 15, 2010)................................... 17

*Buller v. Sutter Health,*
160 Cal. App. 4th 981 (Cal. Ct. App., Mar. 5, 2008).......................................... 16

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................. 24

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ......................................................................... 22

*Consumer Advocates v. Echostar Satellite Corp.,*
113 Cal. App. 4th 1351 (2003) ........................................................................ 13

*Daugherty v. American Honda Motor Co., Inc.,*
144 Cal. App. 4th 824 (2006) .......................................................................... 16

*Fraker v. Bayer Corp.,*
2009 U.S. Dist. LEXIS 125633 (E.D. Cal. 2009) ......................................... 14, 15

*Franulovic v. Coca Cola Co.,*
390 Fed. Appx. 125 (3d Cir. 2010) ................................................................... 14

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995) ............................................................................. 13

*Gest v. Bradbury,*
443 F.3d 1177 (9th Cir. 2006) ......................................................................... 24

*Gordon v. Church & Dwight Co.,*
2010 U.S. Dist. LEXIS 32777 (N.D. Cal. Apr. 2, 2010)..................................... 23

*Hahn v. Mirda,*
147 Cal. App. 4th 740 (Cal. Ct. App. 2007) ..................................................... 16

*Hodgers-Durgin v. De La Vina,*
199 F.3d 1037 (9th Cir. 1999) ......................................................................... 24

*Hovsepain v. Apple, Inc.,*
2009 U.S. Dist. LEXIS 117562 (N.D. Cal., Dec. 17, 2009) .......................... 15, 16

HOWREY LLP

1
2

*In Re GlenFed, Inc. Secs. Litig.,*
42 F.3d 1541 (9th Cir. 1994) ............................................................... 11

3

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
2010 U.S. Dist. LEXIS 44037 (S.D. Cal. May 5, 2010) ..................................... 12

4
5

*In re Metro. Secs. Litig.,*
532 F. Supp. 2d 1260 (E.D. Wa. 2007) ......................................... 2, 8, 9, 11

6

*In re PetSmart, Inc. Secs. Litig.,*
61 F. Supp. 2d 982 (D. Ariz. 1999) ................................................................. 8

7
8

*In re Sony Grand Wega,*
2010 U.S. Dist. LEXIS 126077 (S.D. Cal. 2010)..................................... 16

9

*In Re Tobacco II Cases,*
46 Cal. 4th 298 (2009) ...................................................................... 25

10
11

*Johns v. Bayer Corp.,*
2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ..................... 11

12

*Johnson v. Metabolife Int'l, Inc.,*
2002 U.S. Dist. LEXIS 20665 (N.D. Tex. Oct. 23, 2002) ..................... 12

13
14

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ......................................................... 12

15

*Kent v. Hewlett-Packard Co.,*
2010 U.S. Dist. LEXIS 76818 (N.D. Cal. 2010)..................................... 16

16
17

*Kerns v. Ford Motor Company,*
567 F.3d 1120 (9th Cir. 2009) ......................................................... 15

18

*Laster v. T-Mobile USA, Inc.,*
2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) ..................... 24, 25

19
20

*LiMandri v. Judkins,*
52 Cal. App. 4th 326 (Cal. Ct. App. 1997)..................................... 16

21

*Loreto v. Procter & Gamble,*
--- F. Supp. 2d ---, No. 09-815, 2010 U.S. Dist. LEXIS 91699
(S.D. Ohio Sept. 3, 2010) ......................................................... 19, 21

22
23

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...................................................................... 24

24
25

*Maloney v. Verizon Internet Services Inc.,*
2011 U.S. App. LEXIS 3060 (9th Cir. Feb. 16, 2011)........................... 14

26

*Mathison v. Bumbo,*
2008 U.S. Dist. LEXIS 108511 (C.D. Cal. Aug. 18, 2008) ..................... 8

27
28

*McKinniss v. Sunny Delight Beverages Co.,*
2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007)..................... 13

*Moss v. U.S. Secret Serv.,*

-iii-

HOWREY LLP

572 F. 3d 962 (9th Cir. 2009) ................................................................. 13

*Mut. Pharm. Co. v. Watson Pharm., Inc.*,
2009 U.S. Dist. LEXIS 107880 (C.D. Cal. Oct. 19, 2009) ................................. 23

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
107 Cal. App. 4th 1336 (2003) ................................................................. 15

*Red v. Kraft Foods, Inc.*,
No. 10cv1028, Dkt #79 (C.D. Cal. Jan. 13, 2011) ...................................... 3

*Reddy v. Litton Indus.*,
912 F.2d 291 (9th Cir. 1990) ................................................................. 18

*Rosen v. Unilever United States, Inc.*,
2010 U.S. Dist. LEXIS 43797 (N.D. Cal. May 3, 2010) ..................................... 13

*San Diego Hospice v. County of San Diego*,
31 Cal. App. 4th 1048 (Cal. Ct. App. 1995) ............................................. 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ................................................................. 12

*Stearns v. Select Comfort Retail Corp.*,
2010 U.S. Dist. LEXIS 84777 (N.D. Cal. July 21, 2010) ........................... 18, 24

*Stickrath v. Globalstar, Inc.*,
527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................................... 16

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
307 F.3d 775 (9th Cir. 2002) ................................................................. 22

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................... 16

*United States v. General Dynamics Corp.*,
828 F.2d 1356 (9th Cir. 1987) ................................................................. 22

*United States v. W. Pac. R.R. Co.*,
352 U.S. 59, 63-64 (1956) ................................................................. 21

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) ................................................................. 12

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
673 F. Supp. 2d 1073 (E.D. Cal. 2009) .................................................... 12

**STATUTES**

21 U.S.C. § 393 ................................................................................. 22

**RULES**

Fed. R. Civ. P. 8 ................................................................................................ 7, 8, 13

Fed. R. Civ. P. 9 ................................................................................................ passim

**REGULATIONS**

21 C.F.R. § 10.25 ................................................................................................ 22

21 C.F.R. § 101.1 ................................................................................................ 22

**FEDERAL REGISTER**

72 Fed. Reg. 66103 (Nov. 27, 2007) ................................................................ 23

HOWREY LLP

# MEMORANDUM OF POINTS & AUTHORITIES

## *INTRODUCTION*

In this, their "last chance" to plead a viable claim,[1] plaintiffs fail miserably.  To be sure, their second amended consolidated class action complaint ("SAC") is significantly <u>different</u> from the four complaints that came before it.[2]  For example, plaintiffs have abandoned entirely claims based on allegations about the products' percentage juice content or the fact that the name of the product and images on the label reflect the grape or berry flavors of the product.  Plaintiffs have abandoned entirely allegations relating to the products' "tetra prisma" container.  Plaintiffs no longer make their irresponsible allegations about the H1N1 epidemic or about the December 4, 2009 U.S. Food and Drug Administration (FDA) letter to Nestlé USA, Inc. or about alleged product statements on Twitter or YouTube.  Plaintiffs no longer assert causes of action for unjust enrichment and statutory deceit.

They also have dropped the allegations that Juicy Juice DHA product "promised" that the product "would help their children's brains develop, which they took to mean that it contained ingredients that would help them to become smarter or understand things better," and that labeling statements and advertisements for the Juicy Juice Immunity product "mean[t] that their children would get sick less often if they drank Juicy Juice Immunity."  Moreover, they continue the campaign they started in their

---

[1] At the last hearing, the Court was crystal clear that, after four prior complaints and two successful motions to dismiss, the second amended consolidated class action complaint would be plaintiffs' last opportunity to plead a viable claim and that the Court would "make a final ruling one way or the other" based on this complaint. Transcript of 1/10/11 Proceedings, 3:25-4:1, 4:22-23 ("[T]his will be it, if I give them one more opportunity") (Ex. E).

[2] Plaintiffs previously filed their initial complaints in the individual actions, i.e., *Chavez* (Case No. 09-9192, Dkt. #1) and *Bonsignore* (Case No. 10-119, Dkt. #1), and an initial consolidated class action complaint (Dkt. #35) and first amended consolidated class action complaint (Dkt. #69) in the consolidated action (Case No. 09-9192).

1  earlier consolidated class action complaints of trying to scrub out their admissions from
2  prior complaints about the <u>effectiveness</u> of the nutrients in the products, though, as this
3  Court has recognized (*see* note 11, *infra*), the prior admissions are relevant on this
4  motion.  And plaintiffs significantly downplay their allegations about the <u>amount</u> of
5  DHA in the product and drop those allegations entirely with respect to vitamin C, zinc
6  and prebiotic fiber.

7      Whatever these revisions accomplish, however, they do not result in a viable
8  complaint on the following separate and independent grounds:

9      **(1)    <u>The SAC Does Not Comply with Fed. R. Civ. P. 8 & 9 and Does Not</u>**
10 **<u>State a Claim upon which Relief can be Granted</u>**.   The SAC is still a bewildering
11 welter of confusing allegations unconnected to each other or the four causes of action,
12 without satisfying the most basic pleading requirements of Rules 8 and 9, including a
13 "short plain statement . . . showing that the pleader is entitled to relief" based on a
14 plausible claim.

15     Through their continued "puzzle" and "shotgun" pleading,[3] the SAC still lumps
16 together two distinct products – Juicy Juice® with DHA Fruit Juice Beverage and Juicy
17 Juice® Immunity Fruit Juice Beverage[4] – and multiple stand-alone disparate allegations

18

19 _____

20 [3] "'Shotgun pleadings are those that incorporate every antecedent allegation by
   reference in each subsequent claim for relief or affirmative defense' . . . .  Similarly,
21 puzzle pleadings are those that require the defendant and the court to 'match the
   statements up with the reasons they are false or misleading.'"  *In re Metro. Secs. Litig.*,
22 532 F. Supp. 2d 1260, 1279 (E.D. Wa. 2007).

23 [4] The Court previously took judicial notice of copies of all four sides of the packaging
   labels for each of the two flavors of both products.  *See* Order Granting Motion to
24 Dismiss Consol. Class Action Compl., Dkt. #65, at 3-4.  Copies of the labels are
   attached hereto as Exs. A (grape flavored Juicy Juice with DHA), B (apple flavored
25 Juicy Juice with DHA, C (berry flavored Juicy Juice Immunity), and D (apple flavored
   Juicy Juice Immunity).  The Federal Register excerpt attached as Exhibit I [Front-of-
26 Pack and Shelf Tag Nutrition Symbols; Establishment of Docket; Request for
   Comments and Information, 75 Fed. Reg. 22602-01 (April 29, 2010)] also was the
27 subject of a prior request for judicial notice.

28

1   that by definition do <u>not</u> relate to each other and do <u>not</u> apply to both products.  Most

2   significantly, plaintiffs do <u>not</u> specify the falsity of the alleged misrepresentations or

3   how they were relied upon in the purchasing decision.  Moreover, like its predecessors,

4   the SAC does not connect the dots between the alleged misrepresentations and each

5   cause of action or distinguish between and among the allegations, the products and the

6   causes of action – still leaving that impossible task to Nestlé USA and the Court.[5]

7        At its most basic level, the SAC (like its predecessors) provides no basis to

8   determine what plaintiffs allege is required to establish any of the causes of action.

9   Does a claim require that each separate theory be established?  If only some theories,

10  which ones?  Prebiotic fiber statements?  Vitamin C statements?  Zinc statements?

11  DHA statements?  Does a claim require that both products be purchased or only one?

12  Do the labels of both products need to be reviewed or only one?  Does each challenged

13  labeling statement need to be reviewed and relied upon or only some?  Must there be a

14  certain combination of statements that were relied upon?  Must plaintiffs have viewed

15  and relied upon both of the alleged television commercials referenced in the SAC?

16  Must plaintiffs have viewed and relied upon statements from the product website that

17  plaintiff Chavez allegedly saw?  If so, which ones?

18       The SAC's references to the two specific television commercials fails for

19  additional independent reasons.  Only plaintiff Chavez alleges he saw the commercials.

20  SAC, ¶¶ 39-45, 67-72.  Vincent Bonsignore and Zanetta Taddesse-Bonsignore make <u>no</u>

21

---

22  [5] This is not like the *Red v. Kraft* case, where plaintiff alleges that numerous labeling
23  statements all relate to the <u>same</u> basic alleged misrepresentation, i.e., the general
    healthiness of the cracker products.  *Red v. Kraft Foods, Inc.*, No. 10cv1028, Dkt #79
24  (C.D. Cal. Jan. 13, 2011).  Here, in contrast, the SAC sets out a jumble of disorganized
    and separate allegations about the products and numerous disparate advertising
25  statements – each residing in its own silo and neither dependent on nor related to the
    others – regarding the distinct issues of prebiotic fiber and digestive health, vitamin C
26  and immunity, zinc and immunity, and DHA and brain development – without in any
    way explaining which particular allegation or combination of allegations is required for
27  any given cause of action.

28

1  allegations about seeing, let alone relying on, any television commercials.  And though

2  he alleges he viewed the television commercials (apparently via a single viewing of a

3  television show) and generally claims that aspects of the commercial were false, Chavez

4  does <u>not</u> allege what about any of the specific TV representations made the

5  representations false or, more importantly, <u>that he relied on those specific (allegedly</u>

6  <u>false) representations in making his purchasing decision</u>.

7      The allegations about the product website (SAC, ¶¶ 46-47, 73-75), are similarly

8  flawed.  The website allegations relate only to plaintiff Chavez and, again, all he alleges

9  is that he <u>viewed</u> the website.  He never alleges what about the representations made

10  them false or whether he <u>relied on</u> the (allegedly false) representations in making his

11  purchasing decision.  These incomplete allegations are legally insufficient to support

12  claims for false advertising.

13      The failure to allege a direct relationship between plaintiff Chavez's purchasing

14  decisions and the TV commercials and product website is no accident and is not a

15  matter of mere semantics.  First, plaintiffs are on actual notice from the January 10,

16  2011 hearing on Nestlé USA's last motion to dismiss that the SAC needed to include

17  their best and most complete allegations, including providing all facts connecting the

18  representations to the purchasing decision. [6]  If plaintiffs were able to make any causal

19

20

21

22

23

24

25

26

27

28

---

[6] At the last hearing, the Court warned plaintiffs that they were to set out "in detail what their claims are . . . [a]nd[,] if . . . based upon some sort of misrepresentation, [the Court] want[ed] the requirements of Rule 9 to be satisfied in detail."  Transcript of 1/10/11 Proceedings, 4:1-4 (Ex. E).  The Court further required plaintiff to "identify[y]" what they are relying upon, "when they came across" it, and "cite[] . . . the specific language" being relied upon.  *Id.*, 4:10-16.  Plaintiffs also were advised that they may not rely upon representations they neither saw nor relied on for their purchasing decisions.  "[P]arts of the arguments that were raised by the plaintiffs were based upon other things that there is no indication that any of the plaintiffs had access to in fact or in fact read.  Therefore, if they don't have access to or if they hadn't read, then I don't think they can really challenge that type of language as being misleading because they would not have been affected at all by that."  *Id.*, 7:7-13.  Plaintiffs' counsel responded that they "understood."  *Id.*, 7:14.

1   connection, they certainly would have.  Second, prior versions of the complaint (as well

2   as a statement in open court by plaintiffs' counsel, Ex. E, 7:16-18) alleged

3   unequivocally that plaintiff Chavez's purchasing decisions were based on "the

4   representations made on the front of the products and the message conveyed by these

5   products," not on any TV commercials or website statements.  *See* FAC (Dkt. #69), ¶15

6   (emphasis added).

7        Though prior complaints rested largely on allegations that the products contained

8   insufficient amounts of the nutrients to provide the claimed attributes (*see, e.g.*, initial

9   consolidated complaint (Dkt. #35), ¶¶ 14, 57, 62, 64, 66, 67, 78, 82), that theory is

10  relegated to the scrap heap.[7]  It is dropped entirely regarding vitamin C, zinc and

11  prebiotic fiber.  And it is reduced to a single paragraph (SAC, ¶ 32) with respect to

12  DHA, but even then there are no allegations that the amount of DHA in the product is

13  misleading or in any way plays a part in plaintiffs' false advertising theory.

14       The SAC now places primary focuses on an allegation barely mentioned in the

15  initial complaint – a lack of substantiation for the advertised attributes of the nutrients,

16  including the entirely new allegation that Nestlé USA has a "duty to disclose" the

17  alleged lack of substantiation.  As a matter of law, this new focus fails to state a legally

18  cognizable claim – there is no "duty of substantiation," let alone a duty to disclose an

19  alleged lack of substantiation.  Furthermore, the whole theory is directly contradicted by

20  _____

21  [7] The initial complaints in this action primarily focused on the "miniscule" amounts of

22  the nutrients in the product, as opposed to whether the nutrients actually could provide
    the advertised benefits (going so far as to admit the attributes of the nutrients, just not at

23  the levels found in the products).  Plaintiffs' theory was that Nestlé USA had no right to
    claim the benefits of the nutrients because "the quantities of supplements added to the

24  products were insignificant and provided no benefits as represented."  Initial
    Consolidated Complaint (Dkt. #35), ¶ 14.  The "miniscule" amount theory has been

25  discredited in Nestlé USA's prior motions to dismiss.  Plaintiffs have, therefore,
    attempted a not-so-subtle shift to attacking whether there is substantiation for any

26  advertised benefits of the nutrients at all (and, correspondingly, have had to attempt to
    distance themselves from their prior admissions of the attributes of the nutrients).  The

27  "lack of substantiation" theory also fails for the reasons provided in this motion.

28

other allegations in the SAC (and prior complaints).  The SAC and prior complaints readily admit to the very attributes (and, by necessary implication, the substantiation of the attributes) of the nutrients that plaintiffs now try to challenge.  Remarkably, the SAC (and prior complaints) include detailed references to the very substantiation that plaintiffs confusingly suggest are missing.

Plaintiffs continue to lob in "one off" allegations, such as Nestlé USA represents the products as "superior to other products" (SAC, ¶ 22), represents the products as "provid[ing] certain health benefits beyond comparable products" (*id*., ¶10), that includes the statement "The human brain triples in volume between birth and two years, so it's never too early to start good nutrition habits" on the back of the package (*id*., ¶ 28), and uses the tag line "so she can shine a little more ever day" in commercials and on the website (*id*, ¶¶ 43, 46).

But plaintiffs provide no allegations that Nestlé USA ever compares its products to any other products, and fails to identify any other such products by name.  Equally fatal, plaintiffs never allege that they were deceived or relied upon the (non-existent) "superior" statements or the brain growth statement, or the "so she can shine a little more ever day" line.  In other words, these "one off" allegations are just more examples of plaintiffs' "puzzle pleading" – disparate allegations of alleged wrongdoing that are never supported by factual allegations, never alleged to be wrong, and/or never alleged to have been relied upon.

(**2**)   **The SAC Should be Dismissed Under the Doctrine of Primary Jurisdiction.**  By their SAC, plaintiffs are asking this Court – and eventually a jury – to decide the technical food issues relating to the relative benefits of vitamin C, zinc, prebiotic fiber and DHA, both in the abstract and in the amounts contained in the products, as well as the issue of the level of substantiation required prior to making any representations of such.  This type of analysis falls precisely under the jurisdiction of the FDA.  Indeed, the FDA currently is studying the benefits of DHA, including dosage issues, to determine whether, and how, it will regulate DHA claims on food and

1  beverage products.  Not only does the FDA have jurisdiction over these issues, it is by

2  far the superior venue to analyze and determine substantiation, effectiveness and dosage

3  issues, as this Court already has recognized.  January 10, 2011 Order (Dkt. #75) at 5;

4  2011 U.S. Dist. Lexis 9773, *15.  Under this unambiguous record, the Court should

5  dismiss this action in favor of the primary jurisdiction of the FDA.

6       **(3)    <u>Plaintiffs Do Not Have Standing to Pursue the Claims Alleged.</u>**

7  Plaintiffs do not have standing under either Article III or California law.  Under Article

8  III, plaintiffs must allege a threat of <u>future</u> injury to seek injunctive relief in this action,

9  which they have not done and cannot do.  Plaintiffs also have failed to allege standing

10  under the UCL or FAL because they have failed to plead reliance, i.e., that they have

11  been injured <u>as a result of</u> the alleged false advertising.

12       For these reasons, and others detailed below, and based on the procedural history

13  of this litigation heretofore, Nestlé USA respectfully requests that the Court dismiss the

14  SAC with prejudice.

15                    ***ARGUMENT***

16  **I.    THE SAC – REPLETE WITH "PUZZLE" AND "SHOTGUN" PLEADING**

17       **– FAILS TO SATISFY RULES 8 AND 9 AND SHOULD BE DISMISSED.**

18       The basic pleading requirements are familiar and unambiguous.  Rule 8 requires

19  that a complaint set forth a "short plain statement . . . showing that the pleader is entitled

20  to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 9 requires that "[i]n alleging fraud or mistake, a

21  party must state with particularity the circumstances constituting fraud or mistake."

22       Though now on the fifth iteration of their complaint, plaintiffs do not come close

23  to meeting these simple requirements.  Accordingly, what the Court enunciated in its

24  order granting Nestlé's second motion to dismiss is equally applicable now:

25            In granting Nestlé's previous motion to dismiss, the Court
            expressed the belief that a more profitable use of the Court's
26            and the parties' time would have been made if Plaintiffs had
            been permitted to simply amend their complaint before
27            requiring a full-blown hearing on the motion to dismiss.  This
            belief was apparently mistaken, as the FAC is still
28            frustratingly non-specific as to which of Defendant's

-7-

1  representations Plaintiffs actually relied upon, and how they
   are false.

2  January 10, 2011 Order (Dkt. #75) at 3-4; 2011 U.S. Dist. Lexis 9773, *11.

3      Plaintiffs have not cured the fundamental defect that their pleading as a whole is

4  rambling, unwieldy, and confusing, rendering it impossible for Nestlé USA to respond

5  to plaintiffs' claims in an intelligible manner.  The SAC – like all the complaints that

6  preceded it – employs both the disfavored "puzzle" and "shotgun" pleading styles (*see*

7  note 3, *supra*), alleging 100 paragraphs of very specific allegations of "fact," then

8  pleading the causes of action themselves in a generic, conclusory way, leaving it to

9  Nestlé USA to piece together what the claims are and decipher for itself which factual

10 allegations are material to each cause of action and which are not.  Moreover, the factual

11 allegations are not complete, i.e., they might allege a statement – but not allege it is

12 false, or was viewed, or was relied upon.  Or, they allege a statement is false and that it

13 was viewed, but not allege it was relied upon.  In these ways and many others, the SAC

14 violates Rules 8 and 9 and should be dismissed.

15     Complaints pled in the "shotgun" or "puzzle" pleading style violate Rules 8 and

16 9.  *See Mathison v. Bumbo*, No. SA CV08-0369, 2008 U.S. Dist. LEXIS 108511, at

17 *8 (C.D. Cal. Aug. 18, 2008) (the shotgun "form of pleading is not countenanced, even

18 under the liberal notice pleading standard of Fed. R. Civ. P. 8."); *In re Metro. Secs.*

19 *Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wa. 2007) ("A complaint is deficient for the

20 purposes of Rule 9(b) when it relies on 'shotgun' or 'puzzle' pleading.").  Such

21 pleadings typically hurl "a large and varied mass of accusations" at a defendant and then

22 incorporate all such allegations by generic reference into the claims themselves.  *See*

23 *Mathison* at *7; *In re Metro Secs. Litig.,* 532 F. Supp. 2d at 1279.  Even if the factual

24 allegations are very specific, such a complaint nevertheless violates Rules 8 and 9

25 because it "fails to connect its factual allegations to the elements comprising the

26 Plaintiffs' various claims."  *Id.* at 1279-80; *In re PetSmart, Inc. Secs. Litig.*, 61 F. Supp.

27 2d 982, 991 (D. Ariz. 1999) ("We remind plaintiffs that the heightened pleading rules

28

1  are designed to elicit clarity, not volume.  The court should not have to play connect-
2  the-dots in order to identify the facts and trends upon which plaintiffs base their
3  claim.").

4      The SAC is a prototypical "puzzle" pleading.  It rambles through 100 paragraphs
5  raising a variety of disparate "one off" issues before pleading its first claim for relief.
6  All of its claims for relief then incorporate by reference the preceding jumble of factual
7  allegations.  SAC, ¶¶ 101, 111, 120, 130.  Each of the four causes of action are then pled
8  in a generic, conclusory manner, leaving it up to Nestlé USA to piece together the prior
9  100 paragraphs with what plaintiffs are including in their causes of action.  *See In re*
10 *Metro Secs. Litig.,* 532 F. Supp. 2d at 1279-80 ("the [complaint] fails to connect its
11 factual allegations to the elements comprising the Plaintiffs' various claims . . . .  Each
12 of the Plaintiffs' claims for relief . . . incorporates the factual allegations without
13 specifying which ones support any particular elements of the claim.").

14     For instance, each cause of action only generically summarizes Nestlé USA's
15 alleged wrongdoing.  *See, e.g.,* SAC, ¶ 103 (unfair conduct under the UCL includes
16 "representing to Plaintiffs and the Class that consumption of Juicy Juice Brain
17 Development beverage will provide brain development benefits that it does not . . . .").
18 Plaintiffs thus improperly force Nestlé USA to guess which statements, in the mass of
19 allegations in the first 100 paragraphs of the SAC, the cause of action is premised upon.

20     This task is made especially laborious and difficult because of additional
21 pleading tricks employed by plaintiffs.  For example, the SAC block quotes an entire
22 press release by Nestlé USA regarding the two products at issue without any intervening
23 comment as to which, if any, statements in the block quote form the premise for
24 plaintiffs' claims or why any statements in the release are false or misleading.  SAC,
25 ¶ 24; *see In re Metro Secs. Litig.,* 532 F. Supp. 2d at 1279 ("the [complaint] often
26 rambles through long stretches of material quoted from defendants' public statements . .
27 . unpunctuated by any specific reasons for falsity." (internal quotation marks omitted)).

28

1    Likewise, plaintiffs' confusing (and largely non-existent) allegations of <u>reliance</u>

2  contribute to the SAC's puzzle-like nature.  Each cause of action itself alleges reliance

3  only in the most vague and conclusory manner possible.  *See, e.g.,* SAC, ¶ 109

4  ("Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact

5  and have lost money or property as a result of Defendant's acts as set forth above.").

6  The utter lack of specificity after two prior Court rulings is a compelling testament to

7  the absence of reliance in this action.

8    With extremely limited exceptions, solely related to the product labels

9  themselves,[8] plaintiffs do not allege they relied on a single one of the numerous

10  allegations in the first 100 paragraphs of the SAC.  The allegations regarding the

11  television commercials are a good example of plaintiffs' pleading gamesmanship.

12  Plaintiff Chavez alleges he <u>saw</u> two specific television commercials for the products

13  (SAC ¶¶ 40-43, 68-71), but nowhere does the SAC allege that he *relied* on any

14  statement in these TV ads or that such ads played any causal role in his purchases.[9]  And

15  what is claimed to be false in the television commercial is both erroneously quoted by

16  plaintiffs (the commercial states that <u>DHA</u> is building block for brain development, <u>not</u>

17  the juice itself) (SAC, ¶¶ 42, 44) and contradicted by plaintiffs' allegations as discussed

18  at pages 18-21, below.  Similarly, plaintiff Chavez is alleged to have <u>visited</u> Nestlé's

19  webpage for the products, but there is no allegation that he <u>relied</u> on any statement

20  there.  SAC, ¶¶ 46-47, 73-75.  Plaintiffs carry over the same errors they made regarding

21

22  _____

23  [8] Plaintiff Chavez allegedly relied on two specific, identified statements on the
   packaging of each of the two products at issue in making his purchasing decision.  *See*
24  SAC, ¶¶ 37, 65.  The Bonsignore plaintiffs relied on two specific, identified statements
   on the Juicy Juice DHA product (SAC, ¶ 48), but make <u>no</u> allegations whatsoever about
25  reliance with respect to Juicy Juice Immunity (*see* SAC, ¶¶ 76-81).

26  [9] Though the TV commercials are alleged for the <u>first</u> time only now – more than a year
   after this lawsuit was filed and in the fifth complaint – the allegations of the alleged
27  viewing are suspiciously detailed.  The SAC alleges the two specific television shows
   from 16 months ago in which the commercials appeared.  SAC, ¶¶ 40, 68.

28

1   the TV commercials. *Id.*, ¶ 47 (the website does <u>not</u> say that "Brain Development is 'an

2   essential building block' for brain development'").

3        Vague and generalized references to "commercial[s]" and the "website" are made

4   in the section of the SAC relating to the Bonsignore plaintiffs (SAC ¶ 50-52, 77-79), but

5   (unlike the Chavez section) there are no specific allegations about such things and no

6   allegations that the Bonsignore plaintiffs have <u>seen</u> any specific commercials or have

7   viewed the website, much less that either <u>relied</u> on any statements from commercials or

8   the website in their purchasing decision.

9        The absence of allegations of reliance does not stop plaintiffs from expending

10  considerable space inserting statements and images from the commercials and website.

11  *See, e.g.*, SAC ¶¶ 40-47, 68-75.  But how such allegations tie into the elements of the

12  claims themselves – especially with respect to reliance given that no reliance is alleged

13  – is left a puzzle, apparently for Nestlé USA to piece together on its own.  *See In re*

14  *Metro Secs. Litig.,* 532 F. Supp. 2d at 1280 ("No further reference is made to the

15  previous allegations in the complaint, leaving the reader to wonder which prior

16  paragraphs support the elements of the fraud claim.").  It is axiomatic that plaintiffs

17  cannot base claims on advertising they did not see or rely upon for their purchases.

18  *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926, at *12-13 (S.D. Cal. Feb. 9, 2010).

19       "Puzzle"-style complaints like the SAC "are an unwelcome and wholly

20  unnecessary strain on defendants and on the court system."  *In Re GlenFed, Inc. Secs.*

21  *Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994) (en banc), *superseded by statute on other*

22  *grounds*.  It is plaintiffs' job to articulate a short and plain statement of its claims and to

23  further comply with Rule 9.  Nestlé USA should not be forced to piece together the

24  puzzle of plaintiffs' allegations and false advertising theory in attempting to

25  meaningfully answer their charges.  *Id.* ("A complaint is not a puzzle, however, and we

26  are loathe to allow plaintiffs to tax defendants, against whom they have level[]ed very

27  serious charges, with the burden of solving puzzles in addition to the burden of

28  formulating an answer to their complaint.").  Nor should this Court permit such a

1  confusing pleading "to serve as the document controlling discovery." *Id.*  Accordingly,

2  the SAC should be dismissed.

3  **II.     SEPARATE FROM "PUZZLE" AND "SHOTGUN" PLEADING, THE**

4  **SAC FAILS TO COMPLY WITH RULE 9(b) AND SHOULD BE**

5  **DISMISSED.**

6       Based on the same record detailed above, though separate from the "puzzle"

7  pleading argument, plaintiffs fail to plead their claims with the particularity required by

8  Rule 9(b).  Where a plaintiff alleges a course of "fraudulent conduct" and relies "on that

9  course of conduct as the basis" for his claims, those claims are "said to be 'grounded in

10  fraud' or to 'sound in fraud,' and the pleading . . . *as a whole* must satisfy the

11  particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

12  1125 (9th Cir. 2009) (*quoting Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th

13  Cir. 2003)) (emphasis added).  Significantly, courts have held that claims for false or

14  deceptive advertising brought pursuant to the UCL "sound in fraud" and are subject to

15  Rule 9(b)'s heightened pleading standard.  *Kearns*, 567 F.3d at 1125; *VP Racing Fuels,*

16  *Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1085-86 (E.D. Cal. 2009).

17       The SAC clearly "sounds" in fraud (as this Court has previously recognized, Dkt.

18  #75 at 7-8; 2011 U.S. Dist. LEXIS 9773, at *22-23).  Plaintiffs allege throughout the

19  SAC that Nestlé USA engaged a course of fraudulent conduct by making false and

20  misleading representations regarding the products.  *See, e.g.*, SAC, ¶ 20 (Nestlé USA

21  "knew . . . that claims regarding [the] beverages . . . were false and misleading");

22  ¶¶ 111-119 (UCL claim based on "Fraudulent Conduct").  Therefore, the entire SAC

23  sounds in fraud and must satisfy the particularity requirements of Rule 9(b).

24       To comply with Rule 9(b), averments of fraud must be accompanied by "the who,

25  what, when, where, and how" of the misconduct charged.  *Vess*, 317 F.3d at 1106.  This

26  means that a plaintiff must "state the time, place, and specific content of the false

27  representations as well as the identities of the parties to the misrepresentation."

28  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

1   As detailed above, as to almost the entirety of plaintiffs' allegations they do not

2   allege that the statements were false, how the statements were false assuming they were

3   alleged to be false, that they actual viewed the (allegedly false) statement and/or that

4   they actually relied upon the (allegedly false) statement.  Accordingly, the SAC is

5   legally deficient and should be dismissed  *See In re Hydroxycut Mktg. & Sales Practices*

6   *Litig.*, 2010 U.S. Dist. LEXIS 44037, *32-33 (S.D. Cal. May 5, 2010) ("Plaintiff must

7   state when . . . he saw, heard, and/or read and relied upon the allegedly fraudulent

8   material."); *Johnson v. Metabolife Int'l, Inc.*, 2002 U.S. Dist. LEXIS 20665, at *17

9   (N.D. Tex. Oct. 23, 2002) (complaint failed to satisfy Rule 9(b) where plaintiff failed to

10  identify "any of the dates or times when she saw . . . advertisements on the television").

## III.  SEPARATE FROM "PUZZLE" AND "SHOTGUN" PLEADING, THE SAC DOES NOT ALLEGE A PLAUSIBLE CLAIM AND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED.

15  To satisfy Rule 8, a complaint must "state a claim to relief that is plausible on its

16  face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

17  plausibility when the plaintiff pleads factual content that allows the court to draw the

18  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

19  *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to

20  dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

21  content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

22  *U.S. Secret Serv.*, 572 F. 3d 962, 969 (9th Cir. 2009).

23  To state a valid claim under the UCL or FAL, the advertisements alleged to be

24  false must be "likely" to deceive a "reasonable consumer." *Freeman v. Time, Inc.*, 68

25  F.3d 285, 289 (9th Cir. 1995); *Consumer Advocates v. Echostar Satellite Corp.*, 113

26  Cal. App. 4th 1351, 1360 (2003).  Significantly, the term "likely" means that deception

27  must be probable, not just possible.  *See Freeman*, 68 F.3d at 289.  If the allegedly false

28  advertisement would not deceive a reasonable consumer, then the claim may be

HOWREY LLP

1  dismissed with prejudice on a motion to dismiss.  *See, e.g., McKinniss v. Sunny Delight*
2  *Beverages Co*., 2007 U.S. Dist. LEXIS 96108, at *13, *18-19 (C.D. Cal. Sept. 4, 2007)
3  (dismissing with prejudice false advertising claims under UCL and FAL, where ads
4  would not deceive a reasonable consumer as a matter of law so amendment "would be
5  futile"); *Rosen v. Unilever United States, Inc*., 2010 U.S. Dist. LEXIS 43797, *17 (N.D.
6  Cal. May 3, 2010) (false advertising claims dismissed with prejudice under *Twombly*
7  and *Iqbal*:  "the illogical relationships Plaintiff draws between the nature of partially
8  hydrogenated oil and the representations Defendant makes about the blend of oils
9  renders Plaintiff's complaint implausible"); *Maloney v. Verizon Internet Services Inc*.,
10  2011 U.S. App. LEXIS 3060, at *2-3 (9th Cir. Feb. 16, 2011) (advertising offering
11  Internet speeds "up to 3 Mbps" does not deceive reasonable consumers).

12       Plaintiffs' claims do not satisfy these established pleading requirements.

13     **A.     Plaintiffs' Allegations Regarding "Substantiation" and A "Duty to**
14          **Disclose" Do Not State a Claim upon which Relief can be Granted.**

15       At paragraph 12 of the SAC, plaintiffs introduce the new focus of their
16  complaint, i.e., that Nestlé USA's statements about DHA, vitamin C, zinc and prebiotic
17  fiber "are unsubstantiated."  The theory of liability, repeated throughout the SAC (*see*
18  e.g., SAC, ¶¶ 22, 25, 30, 35, 36, 55, 63, 64, 80, 81, and 85), is made up of two discrete
19  arguments, the general allegation of a failure to have substantiation for the statements
20  and a variant on that theme that Nestlé USA had a "duty to disclose" that it had no
21  substantiation.  Both arguments are legally deficient, do not state a claim and should be
22  dismissed under Rule 12(b)(6).

23          **1.     "Lack of Substantiation" is not a Legally Cognizable False**
24               **Advertising Theory.**

25       Plaintiffs' allegations that Nestlé's statements are unsubstantiated are, fairly read,
26  nothing more than an abdication on plaintiffs' part of the requirements imposed on them
27  in pleading a false advertising claim.  Nestlé USA has no threshold legal burden to
28  provide substantiation for its advertisements and it is impermissible at the pleading

1  stage for plaintiffs to attempt to shift the burden on this issue to Nestlé USA.  When

2  suing for false advertising, a plaintiff must "adduce evidence sufficient to present to a

3  jury to show that Defendant's advertising claims with respect to the Product are <u>actually</u>

4  <u>false</u>; not simply [allege] that they are not backed up by scientific evidence." *Fraker v.*

5  *Bayer Corp.*, 2009 U.S. Dist. LEXIS 125633, at *22-23 (E.D. Cal. Oct. 2, 2009)

6  (emphasis added); *see also Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 128 (3d

7  Cir. 2010) (state law claim for false advertising "cannot be premised on a prior

8  substantiation theory of liability").

9       Under California law, a private plaintiff who asserts a claim for false and

10  misleading advertising must <u>plead</u> that a defendant's labeling or advertising – upon

11  which he actually relied and as a result of which he suffered an injury – are false or

12  misleading.  *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals,*

13  *Inc.*, 107 Cal. App. 4th 1336, 1344 (2003).  "To successfully <u>allege a claim</u> for false

14  advertising, Plaintiff has the burden to <u>plead</u> and prove facts that show that the claims

15  that Defendant made in connection with product are false or misleading."  *Fraker*, 2009

16  U.S. Dist. LEXIS 125633, at *22 (emphasis added).

17       **2.      Plaintiffs fail to allege that Nestlé USA has a "Duty to**

18              **Disclose."**

19       Plaintiffs' theory of a "duty to disclose" the alleged lack of substantiation fails

20  for the same reason as their general "substantiation" theory fails – it is not a recognized

21  false advertising theory.  Plaintiffs are required, first and foremost, to sufficiently allege

22  that the advertising is false.  Furthermore, plaintiffs have failed to allege Nestlé USA

23  had some separate legal duty to disclose that it had an alleged lack of substantiation.

24       When a plaintiff bases a UCL or FAL claim on a theory of fraudulent omission or

25  concealment, the complaint must allege the existence of a duty to disclose and such

26  allegations must meet the specificity requirements of Rule 9(b), including specific

27  allegations of exclusive knowledge and active concealment.  *Hovsepain v. Apple, Inc.*,

28  2009 U.S. Dist. LEXIS 117562, at *9-10 (N.D. Cal. Dec. 17, 2009); *see also Kearns*,

HOWREY LLP

1   567 F.3d at 1127 ("Because the Supreme Court of California has held that nondisclosure

2   is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud

3   claim) must be pleaded with particularity under Rule 9(b)."). Plaintiffs do not even

4   attempt to meet, let alone satisfy, these requirements.

5       A claim under the UCL for an actionable failure to disclose requires allegations

6   that (1) the defendant concealed or suppressed a material fact; (2) the defendant was

7   under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally

8   concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was

9   unaware of the fact and would have acted differently if he had known of the concealed

10   or suppressed fact; and (5) as a result of the concealment or suppression the plaintiff

11   sustained damage. *Hovsepain* 2009 U.S. Dist. LEXIS 117562, at *15-16 (citing *Hahn v.*

12   *Mirda*, 147 Cal. App. 4th 740, 748 (2007)); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123,

13   1132-33 (N.D. Cal. 2010).

14       Plaintiffs do not even try to allege Nestlé USA had a duty to disclose that it had

15   an alleged lack of substantiation, and such failure requires dismissal. *See In re Sony*

16   *Grand Wega Litig.*, 2010 U.S. Dist. LEXIS 126077, *31 (S.D. Cal. Nov. 30, 2010) ("A

17   plaintiff alleging that the defendant failed to disclose material facts must, however,

18   establish that the defendant had a duty to disclose those facts"); *Stickrath v. Globalstar,*

19   *Inc.*, 527 F. Supp. 2d 992, 1000-01 (N.D. Cal. 2007) (to state a claim based on a failure

20   to disclose, the plaintiff must allege with particularity that the defendant had a <u>legal duty</u>

21   to disclose a material fact); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987-989

22   (2008) ("Fairly read, the complaint's focus is on respondents' alleged failure to disclose

23   their prompt-pay discount policy. The distinction is significant as it appears settled that

24   <u>[a]bsent a duty to disclose</u>, the failure to do so does not support a claim under the

25   fraudulent prong of the UCL." (citations and quotations omitted; emphasis added)); *see*

26   *also Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)

27   ("In short, although a claim may be stated under the CLRA in terms constituting

28   fraudulent omissions, to be actionable the omission must be contrary to a representation

1   actually made by the defendant, or an omission of a fact the defendant was <u>obliged to</u>

2   <u>disclose</u>.") (emphasis added).

3        Nor could plaintiffs allege a legal duty to disclose an alleged lack of

4   substantiation.  A duty to disclose exists only where (1) a defendant is in a fiduciary

5   relationship with plaintiff; (2) a defendant has exclusive knowledge of material facts not

6   known to plaintiff; (3) a defendant actively conceals a material fact from the plaintiff, or

7   (4) a defendant makes partial representations, but also suppresses some material facts.

8   *Kent v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 76818, *27 (N.D. Cal. July 6,

9   2010); *Hovsepain*, 2009 U.S. Dist. LEXIS 117562, at *9 (citing *LiMandri v. Judkins*, 52

10  Cal. App. 4th 326, 337, (1997)).  Furthermore, a duty to disclose does not exist where

11  the "facts are not *actually* known to the defendant."  *San Diego Hospice v. County of*

12  *San Diego*, 31 Cal. App. 4th 1048, 1055-56 (1995).

13       Plaintiffs allege none of these requisite elements.  Accordingly, plaintiffs have

14  not alleged that Nestlé USA had a duty to disclose and may not sue Nestlé USA under

15  such theory.

16       Significantly, the SAC specifically recognizes and cites several of the numerous

17  authorities <u>supporting</u> Nestlé USA's claims and on which Nestlé USA relies for the

18  statements it makes.  *See* SAC, ¶ 24 (7:16-8:6), ¶ 46 (17:3).[10]  Indeed, plaintiffs cite

19  additional substantiation.  SAC, ¶ 31.  Because the SAC, itself, alleges that Nestlé USA

20  <u>had and cited to</u> substantiation, and does not allege Nestlé USA intentionally concealed

21  or suppressed the fact that it allegedly believed it had no substantiation, the SAC does

22  not and cannot allege a duty to disclose.  *Bruce v. Harley-Davidson Motor Co.*, 2010

23  U.S. Dist. LEXIS 98180, at *13 (C.D. Cal. Jan. 15, 2010)

24

25  [10] Concurrently with the filing of this motion, Nestlé USA seeks judicial notice of just
    one of the referenced reports.  *See* attached Ex. F.  To avoid burdening the Court with

26  more paper and because Ex. F is a good representative example of the scholarly articles
    Nestlé USA relies upon as substantiation, we have not submitted the other six reports

27  referenced in the SAC at paragraphs 24 and 26.

28

HOWREY LLP

> [U]nder Rule 9(b), plaintiffs must specifically allege as to [the defendants], their respective roles in the alleged fraudulent scheme – for example, which defendant possessed superior knowledge or actively concealed the alleged defect . . . . Accordingly, the Court dismisses without prejudice plaintiffs' CLRA, UCL, and fraudulent omission claims, in so far as these claims are grounded in fraud.

The same result is warranted here.

### 3.   Plaintiffs Concede the Attributes of the Nutrients.

Plaintiffs' "substantiation/duty to disclose" theory fails for the additional reason that plaintiffs, through their current and former complaints, admit that DHA, vitamin C, zinc and prebiotic fiber possess the attributes claimed by Nestlé USA.  We address this point, below, with respect to the specific labeling statements plaintiffs challenge.

### B.   The DHA Representations Are Not Plausibly False Or Misleading As A Matter Of Law.

Plaintiffs allege that DHA does not have the attributes represented and, even if DHA is a building block for brain development, the amount of DHA in the product is "exceedingly small" such that it is deceiving for the product to reference the building block attribute.  SAC, ¶¶ 27, 30, 32.

Other than the generic allegations about being false and misleading, plaintiffs do not even attempt to allege facts challenging the relationship of DHA and brain development.  Nor could they.  Plaintiffs' allegations support the statement that DHA is a "building block for brain development."[11]  In each of their prior complaints, plaintiffs

---

[11] To be sure, now that plaintiffs' primary theory has changed to a "lack of substantiation" theory from an "amount of the nutrient" theory, plaintiffs have systematically removed many of their prior allegations attesting to the benefits of the nutrients they now challenge.  But, as this Court has recognized in the last motion to dismiss proceedings (Dkt. #75 at 5-6; 2011 U.S. Dist. LEXIS 9773, at *16-17), plaintiffs' prior allegations are relevant on this motion to dismiss.  Amended complaints should not contradict prior complaints, and where they do so, the court may disregard the newer inconsistent allegations in ruling on a motion to dismiss.  *See Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading" (internal quotation marks omitted)); *Agron, Inc. v. Chien-Lu Lin*,

(Continued...)

1  allege that "DHA is an omega-3 fatty acid . . . , [i.e.,] a long chain polyunsaturated fatty

2  acid . . . [that] is highly concentrated in the phospholipid bilayer of biologically active

3  brain and retinal neural membranes." FAC (Dkt #69), ¶ 35; *see also* Initial

4  Consolidated Complaint (Dkt. # 35), ¶ 47. Plaintiffs concede that "[s]ome studies in

5  infants suggest that including [DHA] in infant formulas may have positive effects on

6  visual function and neural development over the short term." SAC, ¶ 31; FAC, ¶ 37

7  (emphasis added); Initial Consolidated Complaint (Dkt. # 35), ¶ 49. Moreover,

8  plaintiffs recognize that World Health Organization guidelines suggest daily

9  consumption of DHA, including "for infants." SAC, ¶ 32; FAC, ¶ 40; Initial

10  Consolidated Complaint, ¶ 58. Plaintiffs have further admitted that "DHA has become a

11  popular additive in infant formula and baby formula" (Initial Consolidated Complaint, ¶

12  48) and that "[s]everal sources recommend daily intake of" DHA for children (*id.*, ¶ 61).

13      Thus, plaintiffs' own allegations demonstrate that Nestlé's statement "DHA – a

14  building block for brain development" – the only statement Nestlé USA has made on

15  the subject – is supported, undermining plaintiffs primary theory of liability. *See Loreto*

16  *v. Procter & Gamble*, --- F. Supp. 2d ---, 2010 U.S. Dist. LEXIS 91699, at *18 n.4, *23-

17  24 (S.D. Ohio Sept. 3, 2010) (plaintiffs' own allegations undermined their basic theory

18  of liability).

19      Likewise, the SAC undermines plaintiffs' allegations about the purported

20  "exceedingly small amount of DHA" in the product. SAC, ¶ 32; *see also id.* at ¶ 10

21  ("small amount"). As an initial matter, there are no allegations that the amount of DHA

22

_____

23  (...Continued)

24  No. CV 03-05872*,* 2004 U.S. Dist. LEXIS 26605*,* at *38 n.77 (C.D. Cal. Mar. 16, 2004)
    ("amended complaints must allege facts consistent with prior complaints"); S*tearns v.*

25  *Select Comfort Retail Corp.*, No. 08-2746, 2010 U.S. Dist. LEXIS 84777, at *40 (N.D.
    Cal. July 21, 2010) ("the Court will not accept [as true] Schlesinger's allegation that he

26  did not receive a refund given Plaintiffs' past contradictory pleadings and repeated

27  failure to provide an explanation despite the Court's express concern in its prior
    order.").

28

1   is in any way falsely represented (it is not) and no allegations of how, if at all, the

2   amount of DHA in the product plays a role in plaintiffs' false advertising theory.  In any

3   event, the amount of DHA in the product, as established by the SAC itself, is not

4   "exceeding small."  As shown on the label, the product contains 16mg of DHA per 4 oz

5   serving.  *See* Exs. A & B.  (Because Juicy Juice DHA is specially formulated for

6   children under two years old, the serving size is 4 oz.  *See id.*)  Based on plaintiffs' own

7   allegations, the 16mg per serving of DHA in a single serving of Juicy Juice DHA

8   provides 11% of the suggested daily amount for a six-month old (SAC, ¶ 32; FAC,

9   ¶ 41), 8% of the suggested daily amount for the average 1-year olds (SAC, ¶ 32; FAC, ¶

10  42), and 8% of the suggested daily amount for the average 2 to 6 year old (Initial

11  Consolidated Complaint, ¶ 61).[12]

12        Juicy Juice DHA is not marketed as the "sole source" of DHA (and plaintiffs do

13  not allege otherwise) and there would be no basis for a reasonable consumer to conclude

14  that she (or her children) would (or should) obtain <u>all</u> of their daily needs of DHA from

15  a single 4 oz serving of Juicy Juice.  Indeed, as plaintiffs concede, Nestlé USA

16  affirmatively markets the product as one source among many.  FAC, ¶ 73 (18:25-28 &

17  19:15-18).

18        **C.     The Vitamin C and Zinc Immunity Representations Are Not Plausibly**

19                **False Or Misleading As A Matter Of Law.**

20        Plaintiffs assert that Nestlé USA's statements "Helps Support Immunity" and

21  "Vitamin C & Zinc for Immunity" on the Juicy Juice Immunity product packaging are

22  false and misleading and Nestlé USA "cannot substantiate" them.  SAC, ¶¶ 57-60.

23  Plaintiffs have abandoned entirely their prior (and primary) claim about the <u>amount</u> of

24  vitamin C and zinc in the products, including their prior (and discredited) allegation that

25

26  _____

[12] Plaintiffs' "exceedingly small amount" argument also does not account for the fact

27  that a child may consume more than a single 4 oz serving, and a single additional 4 oz
    serving doubles the daily value percentages listed above.

28

1  Nestlé USA marketed the product as containing a "greater amount of vitamin C than
2  standard Juicy Juice." *See* FAC, ¶¶ 62, 66.

3         Other than the generic allegations cited above, plaintiffs do not even attempt to
4  allege facts challenging the relationship of vitamin C and zinc with a healthy immune
5  system.  Nor could they.  As with DHA, plaintiffs <u>affirmatively acknowledge</u> that both
6  vitamin C and zinc play important roles in immune function.  *See* Initial Complaint in
7  Case No. 09-9192 (Dkt. #1), ¶ 69 ("Both of these micronutrients play important roles in
8  immune function."); Initial Complaint in Case No. 10-0119 (Dkt. #1), ¶ 69 ("[V]itamin
9  C and zinc . . . play important roles in immune function"); *see also* Initial Consolidated
10 Complaint (Dkt. #35), ¶ 78.  Plaintiffs cannot now contradict their own allegations;
11 moreover, they provide no basis for their allegation that there is inadequate
12 substantiation.  *See* note 11, *supra*; *Loreto*, 2010 U.S. Dist. LEXIS 91699, at *18 n.4,
13 *23-24 (plaintiffs' own allegations undermined their basic theory of liability).

14         **D.      The Digestion Related Representations Are Not Plausibly False Or**
15                   **Misleading As A Matter Of Law.**

16         Plaintiffs allege that the statement "Plus Prebiotic Fiber for Digestive Health" is
17 "false and misleading" and that Nestlé USA "cannot substantiate" the claim.  SAC,
18 ¶¶ 58, 59, 60.  But other than these generic allegations, plaintiffs do not even attempt to
19 allege facts challenging the relationship of prebiotic fiber with digestive health.  To the
20 contrary, they readily acknowledge it: "Prebiotics are non-digestible food ingredients
21 that stimulate the growth and/or activity of bacteria in the digestive system which are
22 beneficial to the health of the body."  FAC, ¶ 56.  Plaintiffs further acknowledge that the
23 prebiotic fiber used in Juicy Juice Immunity (gum arabic, also called gum acacia) "has .
24 . . recently been shown to have a prebiotic effect . . . ."  *Id.*, ¶ 58.

25         As with vitamin C and zinc, plaintiffs entirely abandon in the SAC their prior
26 theory about the amount of prebiotic fiber in the product.  See FAC, ¶¶ 58, 66
27 ("miniscule" quantity).

28

1  **IV.   THE COURT SHOULD DISMISS THIS CASE IN FAVOR OF THE FDA'S**
2  **PRIMARY JURISDICTION OVER MATTERS OF FOOD AND**
3  **BEVERAGE LABELING.**

4  Plaintiffs' claims should be dismissed under the primary jurisdiction doctrine.  In
5  order to promote the "proper relationships between the courts and administrative
6  agencies charged with particular regulatory duties," the primary jurisdiction doctrine is
7  applied when enforcement of a claim "requires the resolution of issues which, under a
8  regulatory scheme, have been placed within the special competence of an administrative
9  body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956).  Deferral to an
10  agency is appropriate when it has been "vested with the authority to regulate an industry
11  or activity such that it would be inconsistent with the statutory scheme to deny the
12  agency's power to resolve the issues in question."  *United States v. General Dynamics*
13  *Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987).

14  Application of the primary jurisdiction doctrine "is a matter for the court's
15  discretion."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th
16  Cir. 2002).  "[T]he doctrine applies in cases where there is: '(1) [a] need to resolve an
17  issue that (2) has been placed by Congress within the jurisdiction of an administrative
18  body having regulatory authority (3) pursuant to a statute that subjects an industry or
19  activity to a comprehensive regulatory authority that (4) requires expertise or uniformity
20  in administration.'"  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008),
21  *quoting Syntek* at 781.

22  Each of these elements is satisfied here.  The issue of whether and to what extent a
23  manufacturer may make claims such as "DHA 16 mg Per Serving," "Vitamin C & Zinc
24  for Immunity," and "prebiotic fiber for digestive health" on beverage labeling – and
25  what substantiation is required to make such claims – falls squarely within the
26  jurisdiction of the FDA pursuant to the FFDCA and federal regulations.  *See* 21 U.S.C.
27  § 393(b)(2)(A) (FDA has authority to ensure that foods are properly labeled); 21 C.F.R.
28  § 10.25(b) ("FDA has primary jurisdiction to make the initial determination on issues

1  within its statutory mandate"). The FDA has, of course, used its statutory authority to

2  promulgate and enforce a complex and comprehensive regulatory scheme governing

3  misbranding in general, and food and beverage labeling in particular. *See generally* 21

4  C.F.R. §§ 101.1, et seq.

5      The need for consistency in the administration of the complex federal regulatory

6  scheme governing product labeling, and the special expertise of the FDA support

7  deference to the FDA in this case. Plaintiffs aim – through a jury trial, no less – to

8  enforce their own, subjective requirements regarding what can and cannot appear on the

9  label regarding DHA, vitamin C, zinc and prebiotic fiber, and to do so <u>for only two</u>

10 <u>products</u> in the marketplace. This type of patchwork labeling law dictated by non-

11 experts would undermine any possibility of a valid and uniform regulation of product

12 labeling. And, it would do so while simultaneously ignoring the FDA's jurisdiction

13 over and expertise on such matters.

14     Courts have applied the primary jurisdiction doctrine to claims, like the present

15 one, that have challenged the adequacy of the labeling of an FDA-regulated product.

16 *See, e.g., Mut. Pharm. Co. v. Watson Pharm., Inc.*, No. CV 09-5700, 2009 U.S. Dist.

17 LEXIS 107880, at *15 (C.D. Cal. Oct. 19, 2009) ("[D]isputes concerning the content of

18 [the product's] labels and inserts falls even more squarely within the primary

19 jurisdiction of the FDA"); *Gordon v. Church & Dwight Co.*, No. C 09-5585, 2010 U.S.

20 Dist. LEXIS 32777, at *2 (N.D. Cal. Apr. 2, 2010).

21     Moreover, the FDA currently is considering regulations for labeling claims like

22 those raised in this case. For instance, the FDA is currently in the process of deciding

23 whether, and how, they will further regulate claims regarding products containing DHA

24 – the precise issue plaintiffs attempt to raise by this action. *See* 72 Fed. Reg. 66103

25 (Nov. 27, 2007) (notice of proposed rulemaking to solicit information before

26 finalization of rule governing nutrient content claims about DHA) (attached as Ex. G);

27 *see also* Front-of-Pack and Shelf Tag Nutrition Symbols; Establishment of Docket;

28 Request for Comments and Information, 75 Fed. Reg. 22602-01 (April 29, 2010) (Ex.

1  I); *Gordon*, 2010 U.S. Dist. LEXIS 32777, at *5 (issues related to plaintiff's claims

2  remain under review by the FDA, so it "would be inappropriate for this court to assume

3  the FDA's regulatory role, and to interpret scientific studies or other evidence to

4  determine whether the labeling . . . should be changed").

5       There is no question that what plaintiffs seek to do in this lawsuit overlaps

6  directly with what the FDA is currently evaluation, as shown in the highlighted sections

7  of attached Exhibit G.  There is no question but that the FDA is the better venue to

8  consider the issues raised in plaintiffs' complaint

9  **V.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF.**

10      To satisfy Article III's standing requirement, a plaintiff bears the burden of

11  showing, among other things, an injury that is concrete, particularized, and actual or

12  imminent, not conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

13  560-61 (1992).  Where a plaintiff seeks prospective injunctive relief, the concrete injury

14  element for standing requires a "likelihood of future injury."  *Hodgers-Durgin v. De La*

15  *Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999); *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th

16  Cir. 2006) (where plaintiff seeks injunctive relief, he must demonstrate that he is

17  "realistically threatened by a *repetition* of the violation").  "Past exposure to illegal

18  conduct does not in itself show a present case or controversy regarding injunctive relief .

19  . . if unaccompanied by any continuing, present adverse effects."  *Lujan*, 504 U.S. at

20  564.

21      Plaintiffs lack standing to seek injunctive relief because they cannot allege a

22  threat of <u>future</u> injury.  To the extent plaintiffs suffered injuries as a result of purchasing

23  the products, that injury has already occurred and plaintiffs are now fully aware of the

24  alleged false advertising and are able to avoid any future purchases of the products.

25  Without a likelihood of future injury, plaintiffs do not have standing to seek injunctive

26  relief.  *See Laster v. T-Mobile USA, Inc.,* No. 05-1167, 2009 U.S. Dist. LEXIS 116228,

27  at *10 (S.D. Cal. Dec. 14, 2009) ("Plaintiffs' knowledge [of alleged false advertising]

28  precludes them from showing likelihood of future injury . . . Therefore, prospective

1  relief will not redress Plaintiffs' alleged injuries."); *Cattie v. Wal-Mart Stores, Inc.*, 504

2  F. Supp. 2d 939, 951 (S.D. Cal. 2007); *Stearns v. Select Comfort Retail Corp.*, No. 08-

3  2746**,** 2010 U.S. Dist. LEXIS 84777, at *58-59 (N.D. Cal. July 21, 2010).[13]

4  **VI.   PLAINTIFFS FAIL TO ESTABLISH STANDING UNDER THE UCL AND**

5      **FAL.**

6      Based on the same record establishing plaintiffs' failure to satisfy Rule 9,

7  plaintiffs lack standing under the UCL and FAL because they have failed to properly

8  plead reliance, or "causation."  Plaintiffs must allege that the alleged misrepresentations

9  were an "immediate cause" of the injury, but they fail to do so.  *See In Re Tobacco II*

10  *Cases*, 46 Cal. 4th 298, 326 (2009).

11                              ***CONCLUSION***

12      For the foregoing reasons, Nestlé USA respectfully requests that the Court grant

13  its motion to dismiss the second amended consolidated class action complaint with

14  prejudice.

15  Dated:  March 2, 2011               HOWREY LLP
                                        Carmine R. Zarlenga
16                                      Dale J. Giali

17                                      By:_____/s/ *Dale J. Giali*_____

18                                            Dale J. Giali

19                                      Attorneys for Defendant

20                                      NESTLÉ USA, INC.

21

22

23

24  _____

25  [13] The fact that there may be a likelihood that unnamed class members suffer future
    injury is irrelevant.  *See Hodgers-Durgin*, 199 F.3d at 1045 ("Unless the named
    plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class
26  seeking that relief.  Any injury unnamed members of this proposed class may have
    suffered is simply irrelevant to the question whether the named plaintiffs are entitled to
27  the injunctive relief they seek."); *Laster*, 2009 U.S. Dist. LEXIS 116228, at *10 (stating
    that "unnamed class members' standing [does not] confer jurisdiction").

28