# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. CV 09-9192-GW(CWx) | Date  May 2, 2011 |
| Title  *Mauricio Chavez v. Nestle USA, Inc., et al.* | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

    Hal D. Cunningham
    Joseph P. Guglielmo

Attorneys Present for Defendants:

    Dale J. Giali
    Carmine Zarcenga

PROCEEDINGS:  **DEFENDANT NESTLE USA, INC.'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (filed 03/02/11)**

The Court's tentative ruling is circulated and attached hereto. Court hears oral argument.

Defendant Nestle USA, Inc.'s Motion to Dismiss Second Amended Consolidated Class Action Complaint is **taken under submission.** Court to issue ruling.

A Status Conference is set for **May 19, 2011 at 8:30 a.m.** Parties may appear telephonically provided that notice is given to the clerk by May 17, 2011.

 

                                                                                                                                                                  :     50

                                                  Initials of Preparer   JG

*Chavez v. Nestle USA*, Case No. CV-09-9192
Tentative Ruling on Motion to Dismiss Second Amended Complaint

**Introduction**
    Before the Court is the motion of Defendant Nestle USA, Inc. ("Defendant" or "Nestle") to dismiss the Second Amended Consolidated Class Action Complaint ("SACC") filed by Plaintiffs Mauricio Chavez, Vincent Bonsignore, and Zanetta Taddesse-Bonsignore. Plaintiffs' lawsuit has been the subject of two prior motions to dismiss and two somewhat extensive written rulings. At the last hearing, Plaintiffs were advised that they would be given one final opportunity to plead a viable claim.
    The SACC alleges claims under: 1) Cal. Bus. & Prof. Code §17200, et seq. - the Unfair Competition Law ("UCL"), and 2) Cal. Bus. & Prof. Code §17500, et seq. - the False Advertising Law ("FAL"), based on Defendant's alleged deceptive marketing and advertising practices in connection with its Juicy Juice Immunity and Brain Development beverages ("Immunity" and "Brain Development"). In the SACC, the focus of Plaintiffs' pleading has shifted from allegations of affirmative misrepresentations by Defendant, see e.g., First Amended Consolidated Class Action Complaint ("FACC") ¶ 21 ("Defendant affirmatively misrepresents . . . the effect of Immunity and Brain Development juice products on immunity and brain development in order to convince the public to purchase and use these products."), to essentially alleging that Defendant's claims about its products are deceptive because they are unsubstantiated. For example, at paragraph 22 of the SACC, Plaintiffs allege that "Defendant does not possess requisite scientific evidence to substantiate Defendant's claims regarding Juicy Juice Immunity and Brain Development beverages, including, but not limited to, claims regarding these products' effect on immunity or brain development." While there are still conclusory allegations of affirmative misrepresentations in the SACC, Plaintiffs in their Opposition have not identified any examples of such. Thus, the hearing on this motion will likely focus on whether claims of a "lack of substantiation" may form a basis for an action under the UCL or FAL.
    Based on the arguments in the parties' papers, the Court would conclude that Plaintiffs have not stated a claim under the UCL or FAL, and would dismiss the action.

**Background**
    One difficulty with the SACC, as with previous versions of Plaintiffs' pleading in this action, is that it lumps together distinct products and multiple factual allegations without giving the reader a clear sense of which allegations support which specific claims. While Defendant argues that this is a basis for dismissal under Rule 8 of the Federal Rules of Civil Procedure, at this stage of the proceedings the Court probably is not apt to dismiss the entire action just because the Complaint is hard to decipher. For the purpose of this motion, the Court will adopt Plaintiffs' summary of the factual allegations of the SACC, reproduced as follows, to see whether they give rise to any actionable claim:

> Plaintiffs' Brain Development Allegations
>     Contrary to Defendant's argument that Plaintiffs' Complaint is a "puzzle" pleading, the Complaint clearly alleges the specific statements

made by Defendant on the packaging of Brain Development, in addition to the name of the product itself, are deceptive, false and/or misleading: "DHA – A BUILDING BLOCK FOR BRAIN DEVELOPMENT" (¶27); and "Good to Remember . . . . The human brain triples in volume between birth and two years, so it's never too early to start good nutrition habits." (¶28).

Specifically, and directly contrary to Defendant's arguments that Plaintiffs do not specify the falsity or do not plead reliance, the Complaint clearly alleges that Plaintiff Chavez purchased Brain Development Apple beverage in November and December 2009 (¶15), and, in doing so, viewed and specifically relied on the representations made by Defendant on the packaging of this product. See ¶¶16, 37. Plaintiffs' Complaint likewise clearly alleges that the Bonsignore Plaintiffs purchased Brain Development Apple and Grape beverages during the Class Period (¶18), and in doing so, viewed and specifically relied on the representations made by Defendant on the packaging of this product. See ¶¶19, 48.

The Complaint additionally alleges that Plaintiff Chavez, on or about September 2009, viewed Defendant's television commercials for Juicy Juice Brain Development (¶40), which contained the following representations: "Her brain will triple in size by the time she's two" (¶41); "Introducing new Nestle Juicy Juice Brain Development with DHA. An essential building block for her brain to develop" (¶42); "So she can shine a little more every day." ¶43. The Complaint further alleges that Plaintiff Chavez visited the Juicy Juice website, which contained the following false and misleading representations, in relevant part:

> Juicy Juice Fruit Juice Beverage is enhanced with DHA, an essential building block for brain development, and comes in delicious apple and grape flavors. So you can help her shine a little more every day.
> 
> \*   \*   \*
> 
> DHA is a building block for the brain in infants; according to research, DHA may help support early-age brain and eye development. DHA is naturally found in breast milk, and experts often recommend infant formula fortified with DHA for children who are not breastfeeding. (Kris-Etherton 2007).
> JUICY JUICE BRAIN DEVELOPMENT Fruit Juice Beverage with DHA is a smart choice for parents who are ready to introduce juice beverages into their baby's diet.

¶46. Significantly, Plaintiff Chavez alleges that he believed and thus relied upon the representations made by Defendant in advertisements regarding Brain Development. ¶¶16, 76.

Plaintiffs' Immunity Allegations

Plaintiffs' Complaint clearly alleges that the specific statements made by Defendant on the packaging of Immunity are deceptive, false and/or misleading: "HELPS SUPPORT IMMUNITY" (¶57); and "VITAMIN C & ZINC for Immunity PLUS PREBIOTIC FIBER for Digestive Health." ¶58.

Again, with regard to the Immunity product, Defendant claims that Plaintiffs failed to specify the falsity or plead reliance. To the contrary, the Complaint alleges that Plaintiff Chavez purchased Immunity Apple and Berry beverages (¶15), and, in doing so, viewed and specifically relied on the representations made by Defendant on the packaging of this product. See ¶¶16, 65. Plaintiffs' Complaint alleges that the Bonsignore Plaintiffs purchased Immunity Apple and Berry beverages (¶18), and in doing so, specifically viewed and specifically relied on the representations made by Defendant on the packaging of this product. See ¶¶19, 76. ("The Bonsignore Plaintiffs purchased Immunity Apple and Berry believing that Defendant had a reasonable basis for its representations that the product promoted immunity, which, in fact, Defendant did not.").

In addition, the Complaint alleges that Plaintiff Chavez, on or about September 2009, viewed Defendant's television commercials for Juicy Juice Immunity (¶68), which contained the following representations: "She'll be exposed to over a billion germs this year." (¶69); "Introducing Nestle Juicy Juice Immunity With Vitamin C, Zinc, and Prebiotic Fiber. So they shine a little more every day." ¶70. Plaintiffs' Complaint alleges that Defendant's commercial misleadingly implies that Immunity will provide protection from germs. ¶72. In addition, the Complaint alleges that Plaintiff Chavez visited the Juicy Juice website, which contained the following false and misleading representation, in relevant part:

> NESTLÉ JUICY JUICE IMMUNITY Fruit Juice Beverage contains Vitamin C and Zinc which are essential for a healthy immune system, and Prebiotic Fiber to help maintain a healthy digestive system.

¶73. Plaintiff Chavez alleges that he relied upon the representations made by Defendant in advertisements regarding Brain Development. See ¶16.

**Legal Standard**

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59; see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co., 588 F.3d 659, 667 (9th Cir. 2009) (conforming that Twombly pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

In deciding a 12(b)(6) motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. See Barker v. Riverside County Office of Ed., 584 F.3d 821, 824 (9th Cir. 2009); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. See Iqbal, 129 S.Ct. at 1951; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**Analysis**

Plaintiffs' summary of the factual allegations in the SACC, while obviously not meant to be comprehensive, more or less speaks for itself. While Plaintiffs purport to identify specific "false and misleading representations" by Defendant, what they do not do (either in their Opposition or in the SACC itself) is adequately explain why the identified statements are false or misleading. None of the statements are alleged to be actually or identifiably false. Plaintiffs do not, for example, allege facts challenging the relationship of DHA and brain development, the role of Vitamin C and zinc in immune function, or of pre-biotic fiber in digestion. Indeed, as Defendant observes, in previous versions of the Complaint these were expressly conceded. Nor is it obvious as to what elements of the identified statements are misleading. As Defendant notes, there are a few scattershot allegations in the SACC that are not mentioned in Plaintiffs' summary, such as that Nestle represented that its products were "superior to other products," but these are not supported by any specific facts. In any event, such statements would likely be too vague to be actionable.

Where prior versions of the Complaint alleged that the products contained insufficient amounts of the nutrients to provide the claimed attributes, there are no such allegations in the SACC except for a single reference to the "exceedingly small amount of DHA" contained in the Brain Development beverages. Even here, as Defendant observes, there are no allegations that consumers were misled regarding the actual amount of DHA in the products, nor any explicit link between the amount of DHA and Plaintiffs' false advertising theory. While the Court would

reject Defendant's assertion that it does not - either explicitly or implicitly - make the claim that Juicy Juice promotes "brain development" (whatever that means) in children, Plaintiff has not articulated what about that claim is deceptive beside the fact that it is supposedly unsubstantiated.

The primary focus of the SACC is now, unarguably, on a supposed lack of substantiation for the advertised attributes of the nutrients contained in the Brain Development and Immunity products. See e.g., SAC, ¶¶ 22, 25, 30, 35, 36, 55, 63, 64, 80, 81, and 85. In this regard, Plaintiffs' case is readily distinguishable from Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008), upon which Plaintiffs largely rely. There, the plaintiffs alleged that words and pictures on the product packaging suggested that the products contained juice from oranges, peaches, strawberries, and cherries, when in fact it did not, which is to say they alleged that the words and pictures on the product label were actually false and misleading, and not simply "unsubstantiated." See id. at 936. For the following reasons, the Court would conclude that Plaintiffs' allegations regarding a lack of substantiation for Defendant's product claims (as alleged here) cannot support a cause of action under the UCL or the FAL.

Plaintiffs' theory of liability based on lack of substantiation has two interrelated components: (1) the general allegation of Defendant's failure to have substantiation for the statements regarding the attributes of the nutrients contained in its products, and (2) the existence of a "duty to disclose" on the part of Nestle that it had no substantiation.

### 1. "Lack of Substantiation" is not a cognizable theory under the UCL or FAL.

In a case cited by Defendant, Fraker v. Bayer Corp., 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009), the district court expressly held that false advertising claims cannot be based upon a lack of substantiation. In Fraker, prior to plaintiff's initiation of a putative class action lawsuit, the defendant had been sued by the United States for violations of the Federal Trade Commission Act arising from its marketing of a weight-loss product. The plaintiff sought to represent "a class of individuals who, in reliance upon Defendant's unsubstantiated claims of weight control benefits associated with [its] Product, purchased Product and were allegedly thereby damaged." Id. at *3. The court rejected the plaintiff's claim under the FAL as well as a UCL claim predicated upon a violation of the FAL, writing that "Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading." Id. at *22. As further noted in Fraker, "In short, the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot." Id. at *21. Fraker, in turn, cites to National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc., 107 Cal. App. 4th 1336, 1345 (2003), which has held that, as to the UCL and the FAL, "Private plaintiffs are not authorized to demand substantiation for advertising claims . . . . The Legislature has expressly permitted prosecuting authorities, but not private parties, to require substantiation of advertising claims." See also Franulovic v. Coca Cola Co., 390 Fed. Appx. 125, 128 (3d Cir. 2010) (state law claim for false advertising under New Jersey law "cannot be premised on a prior substantiation theory of liability").

Plaintiffs attempt to support their lack of substantiation theory with the observation that "[t]he California Supreme Court has recognized that [the UCL and FAL] prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading

or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams, 552 F.3d at 938 (brackets and internal quotes omitted). This does not save Plaintiffs' Complaint, however, because, like the plaintiff in Fraker, Plaintiffs have offered no support for the contention that a lack of substantiation could render Defendant's claims misleading.

Even if the Court were somehow inclined to allow this case to survive the pleading stage, National Council Against Health Fraud would provide a cautionary note. There, the plaintiff brought an action under the UCL and FAL against a seller of homeopathic remedies. "At trial, NCAHF proceeded on the theory that there is no scientific basis for the advertised efficacy of King Bio's products." 107 Cal. App. 4th at 1341. The California Court of Appeal, affirming the trial court's grant of the seller's motion for judgment upon the conclusion of plaintiff's case, declined to shift the burden of proof to the defendant to prove the veracity of its claim. It wrote, "there is no basis in California law to shift the burden of proof to a defendant in a representative false advertising and unlawful competition action. We conclude further that the Legislature has indicated an intent to place the burden of proof on the plaintiff in such cases." Id. at 1342. Obviously, the applicable burden of proof is not relevant in a motion to dismiss. However, before embarking towards a trial in this case, it is not unreasonable to expect Plaintiffs to plead facts that show they would have some remote chance of prevailing at trial.

   2. Plaintiffs have not alleged a duty to disclose.

The Court would further reject Plaintiffs' contention that they need not have alleged a duty to disclose in order to make out a claim under the UCL based on Defendant's supposed omissions. As Defendant has shown, it is established California law that "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." Buller v. Sutter Health, 160 Cal. App. 4th 981, 987-89 (2008); In re Sony Grand Wega Litig., 2010 U.S. Dist. LEXIS 126077, at *31 (S.D. Cal. Nov. 30, 2010) (under the UCL "[a] plaintiff alleging that the defendant failed to disclose material facts must, however, establish that the defendant had a duty to disclose those facts"); Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 1000-01 (N.D. Cal. 2007) (to state a claim based on a failure to disclose, a plaintiff must allege with particularity that the defendant had a legal duty to disclose a material fact). Here, Plaintiffs manifestly have not alleged such a duty.

"A duty to disclose exists if one of the following four circumstances is present: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts." Hovsepian v. Apple, Inc., 2009 U.S. Dist. LEXIS 117562 *9 (N.D. Cal. Dec. 17, 2009) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997). Plaintiffs in their Opposition evidently intend to argue the existence of a duty based either on (3) or (4), but their argument in this regard is circular and nonsensical. They write:

> First, a duty to disclose exists if defendant makes partial representations but also suppresses some material facts. LiMandri v. Judkins, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997).
> "A misrepresentation is judged to be 'material' if 'a reasonable man' would attach importance to its existence or nonexistence in

> determining his choice of action in the transaction in question."
> Kwikset Corp., 120 Cal. Rptr. 3d at 759. In the alternative, it may
> also be material if the maker of the representation knows or has
> reason to know that its recipient regards, or is likely to regard, the
> matter as important in determining his choice of action, although a
> reasonable man would not so regard it. Id. at 760. Here, Plaintiffs
> allege that they paid more for Defendant's Brain Development and
> Immunity products than they would have but for Defendant's
> misrepresentations regarding the products, demonstrating that
> Defendant's misrepresentations regarding Brain Development and
> Immunity are material. See, e.g., ¶89.

Opp. 16:3-15. Clearly, Plaintiffs have not argued (or alleged) the existence of a duty based on partial disclosure, nor have they argued that the alleged omission was material. Finally, as Defendant observes, Plaintiffs have not alleged any facts that show that Nestle actually knew of the lack of substantiation.

### 3. Primary Jurisdiction

Although it is not necessary to decide the issue of primary jurisdiction based on Plaintiffs' apparent failure to articulate any cognizable claim, there is still a question whether the courtroom is the appropriate forum for resolving scientific disputes regarding the efficacy of the nutrients in Defendant's Brain Development and Immunity beverages. For the reasons stated in the Court's Order on January 10, 2011, Plaintiffs' claims regarding the presence of DHA in the Brain Development beverage would be subject to dismissal under the primary jurisdiction doctrine.

### 4. Standing

Finally, the Court would reject Defendant's constitutional argument that Plaintiffs' supposed knowledge of Defendant's alleged misconduct would bar them from seeking an injunction in the context of a class action. This is a moot point, however, in light of the above discussion.

**Conclusion**

Defendant's Motion to Dismiss the SACC would be GRANTED. At this point, the question is whether the dismissal should be with prejudice.